All right, we have 1 more of these this morning. This 1 is Cocom v. ABM Aviation. And, um. Mr. Fierce, are you? Yes. All right. Mr. Fierce is here. He's going to be starting us off. Um, Mr. Mr. Bellow, can you go ahead and unmute for a 2nd and make sure we can hear you? Yes, sir. Good morning. Yeah, we can. I can hear you fine. So, uh, we'll, uh, now you can mute back up again if you want to, and we'll, we'll start off with Mr. Fierce. State your name and how much time you hope to reserve for rebuttal. Thank you, Your Honor. Daniel F. Fierce, uh, on behalf of ABM Aviation, and I'm accompanied by Brian Shaw, my colleague, um, I would say, uh, if I could reserve 4 minutes at the end, that would be sufficient. Everybody's doing different times. It makes it hard for me to remember. All right, go ahead. All right. May it please the Court. Um, we're here today, uh, on the District Court's denial of a motion to compel arbitration and a motion to strike the class waiver that is in the arbitration agreement. Um, and where I will start is that, um, as we briefed, um, there is a strong public policy, uh, federal law and state law favoring arbitration. And, uh, the FAA obviously provides the federal guideline and state court law provides the state guideline. In this matter, there's basically three issues that we have. Um, first, whether or not the arbitration agreement, the ABM's, uh, arbitration agreement is substantively unconscionable. There's also a procedural unconscionability issue as well, but whether the agreement is unconscionable. Secondly, to the extent that there is any unconscionable term in the agreement, whether it, it can be severed out pursuant to the severability clause that is in that agreement. And then third, uh, if for any reason, um, the agreement was deemed unconscionable and couldn't be enforced and couldn't be cured through severance, whether or not the, uh, class. Waiver stands alone. It seems to me in this case, um, this case, a lot of it, at least in my view, turns on whether or not, maybe all of it turns on, um, whether or not you interpret this as only applying to employment related claims, as I think you argue, or whether or not you interpret it as applying to all claims and a lot of other things derived from that. And, and, um, your colleagues on the other side's best argument is, is the language that says including but not limited to claims arising and or relating in any way. Um, so including but not limited to, that's, that's your big problem. I think if you can overcome that language and this is interpreted as applying to employment only, a lot of the other issues, you know, the duration, if it's only employment, then duration is going to, um, depend on, on, on, on that. So that, uh, why should we not read not limited to, I'm, I'm a textualist. Fair enough. I, I, I agree that the other issues are collateral. Once that issue of whether or not this applies beyond employment agreements, if that is resolved in favor of ABM, then the other issues go by the way, the duration, mutuality, um, and. Yes. So, so two points on that, Your Honor. And I'll start with the easiest one first. Um, unfortunately, the district court did not apply the Ramirez, uh, to case the California Supreme Court case on severability. And there is a severability clause in this agreement. And instead, the court, the district court relied upon an intermediary court of appeal, the Cook case, um, which is factually different from this case, but the standard use for severability, if the, if the language of the agreement is over. But not limited to, that's all you got to do. Line that out. Exactly. They're, they're in, in the, in the preamble there, there's claims arising related to hiring employment or association. Correct. In the preamble, there are six words. And in paragraph a, there are six words, both going to the same topic. And specifically in the preamble, it's including, but not limited to those. And in paragraph a, it is including, but not limited to claims. If those were deleted, to accomplish the lawful purpose of including, right? Like you can leave including in there. Um, you would because it, in a, it would say any claim that the company has against me, et cetera, arising and or relating to, in any way, my hiring, employment or association with. So, um, you would not need the including, but not limited to claims in paragraph a. Now, you do, they do, they do have some cases that, um, involve not exactly the same type of language, but arguably similar language. And in those cases, the courts did not sever. I'm trying to remember their intermediate court of appeals. Well, the primary one that was relied upon by the court and by the, the appellee in this case is the Cook case. Cook versus USC. And that case was, it's a perfect example of bad facts making bad law. Um, because that case specifically said whether or not the dispute arises out of employment. So it's very clear that the intent of that, when you write whether or not, that's not loose language, unlike a couple of clauses that's here that say including, but not limited to. What was the intent then of the not including, but not limited to language? Why not just say including? That you look at the specifics of what is in the contract. And the only specifics that are in this contract are employment related claims, hiring, compensation, end of employment, employment. So when you look at the specific under rules of construction, you're supposed to focus on the specific and not a generality. And so, Your Honor, I was not there when it was drafted. It wasn't my document, but somebody threw in some loose language. I think it's almost a throat clearing. We want to make sure that we haven't overlooked anything. Maybe they were paid by the word, Your Honor. I don't know. But sometimes loose language gets in there. But if you look at the essence of this contract, and if the court looks at the Ramirez 2 decision that we've cited, the court, the California Supreme Court, which the district court is supposed to look to for issues regarding severability. There seems to be three answers to Judge Tong's question. One is, somebody decided to include this because they were thinking, I want to go outside the employment context, right? Including, but not limited to could be, that was what they were thinking. And I think that another would be just lawyers, you know, putting in legalese, you know, just like I think what Judge Tomlin was kind of referring to here. And the other, I suppose, would be a worry that some clever employee's lawyer finds a way to characterize an employment claim, what we would all probably conceive to be as a non-employment claim. And so think, well, you better not – you can't get around our language here by cleverly characterizing an employment claim as a non-employment claim. That would be – so it would be one of those three things. And it seems to me on the latter two favors you and the first one favors the other side. Yeah, I would agree with – I would agree that those are the possibilities, Your Honor. But one has to look at the context of the agreement as well. This is not a arbitration agreement that's contrary to the principles announced by the California Supreme Court in Armendariz where it's just substantively flawed and it's an overreach. And it's tainted with illegality as the Ramirez II case said. And the California Supreme Court in that case, the 2024 case, said if the purpose of the agreement is tainted with illegality, then that's a problem in terms of severance. But if it's not, then you look to the agreement. You say, one, can it be – can language be excised? So can I ask you – so the severance argument and the interpretive arguments are – there are some similarities but maybe – but not exactly similar. And I'm trying to figure out if we were to conclude that it was the first interpretation, that we think this was included in order to include non-employment claims, could we still then sever or would we – does that address your severance argument? I'm trying to figure out if your severance argument is different because if we conclude it's the second or third of my three options I gave, which are including but not limited to was only meant because of bad drafting or to include employment-type claims that might not quite be labeled as employment, then I don't know why we'd need to sever. We would just read it. We'd say that's probably what it means. But if we concluded that it actually meant to include non-employment claims, the broad – your colleagues on the other side's argument, then wouldn't we – could we conclude that and then just decide to sever it? Because that would be kind of contrary to the intent. But maybe we'd sever it because we'd say – maybe we'd still sever it because we'd say, well, we didn't give the drafters everything they wanted because part of what they wanted was improper and the FAA tells us to save these things. And I think California law tells us to save when we can. That's what your – California Supreme Court. Yes, and to respond to your question, if it was category number one, door number one, where some nefarious lawyer was trying to overreach or something or include some language that was a little too broad, even though there's no record of that, there's no record that somebody intended that, and we're perfectly willing to strike that from this agreement because that's not the intent. And in fact, in this particular dispute – But we're assuming it's the intent. It's a wage and hour dispute, and it's an employment dispute in this case. You're going to answer – the way you framed it, you said assuming it was their intent. Yeah, assuming it was their intent, then that is the whole purpose behind severability. For instance, in any contract where someone makes a mistake and assumes that a certain – in this case – My question is if they didn't make a mistake, if they really want to do this thing that you can't do, right, that California law doesn't let you do, do you sever? And so let's assume that's not a mistake. It's just we have a contract that says we want to do A, B, and C. But B and C you can't do under – or let's just say C you can't do under California law. Then even if they really want to do C, you say California policy is – and contracts is to sever C and keep A and B. Yes. Even if you really did want to do the nefarious C that California law says is bad. Yes, but in this case, I would say that it's not even nefarious because this contract that came about at least nine or ten years ago – I realize you're not – you're putting it back on the table. There's no clear law that said it was nefarious if that was the intent. Well, let me – if you don't mind, I'm trying to keep us on track. You want to keep four minutes, and we're down to 3.20, and you're going to have to say if you want to say in response to the other side. So unless my colleagues have more questions in opening, can I have you sit down, and we'll hear from the other side.  Thank you very much. Thank you. Thank you. Thank you, counsel. Mr. Bellow? Good morning, Your Honors. Jordan Bellow on behalf of Robert Kocum of Pelley. I don't know if you wanted me to just start in on the language that you guys – Heard my – I was talking to you even though I was talking to the other side. I really do think this – and I don't know if my colleagues agree with me. They don't always, sadly. But I really do think that this whole thing comes down to – let me ask you then. What do you think if we are to interpret this language that contract is being limited to employment claims, do you still win? Or does that – my reading – my thinking was if we interpret it as employment claims, a lot of the latter arguments, a lot of the other factors sort of get driven by that. For instance, your duration argument that these are infinite duration. Well, they're not really infinite duration if they're employment claims because once the person quits and the statute of limitation runs, there's no more employment claims. There's kind of a built-in duration. And I think some of the other things are like that too. So maybe you can help me out initially here by why would you still win if I was to interpret this as being limited to employment? And then we can come back to whether I should interpret it that way. I think we would still win. I think it does – once you take away the scope issue, it does, I guess, lighten the duration issue. But this also does extend to a broad scope of third parties. Yeah, but that's explained by – and I think there's some California cases that in the employment context, they're just as an inherent asymmetry that employees tend to sue their employer and everybody else, their boss, their boss's boss, and the parent company and all that stuff. And so that also sort of is relevant even to that. As I read it, they're all kind of – And you sued 100 John Doe's in addition to ABM. That's just part of it. But we sued ABM Aviation. The agreement that they made them sign was with ABM Industries, which has numerous – Which is why you have an expansive definition of what the employer or the company is in order to cover just this situation, is it not, counsel? Yes, but this goes beyond the company, its affiliates, parents, employees. It includes vendors, any third party, vendors. So it's going to depend on the fact that – If you employ employment-type claims, then you could sue a vendor. You could sue a vendor if it was not an employment type. Some of your hypotheticals you gave in your briefing about this is egregious, you couldn't sue a vendor if the vendor – you bought something independently from them in your capacity as a private citizen. But again, that's not a concern if it's interpreted as only applying to employment-type claims. So I kind of go back to my question. Well, I would go back. Why would they include the third parties, including vendors, if it's limited to employment claims? And so if we go back – if we want to go back to the – A trucker backs over you while you're loading things. A third-party vendor that sells stuff, they back over you, and so you sue everybody because of that. That's employment-related, but it involves a vendor. And that's where I would say it depends how broad – if it is even limited to claims that arise from employment. If you get in a dispute with a coworker, you guys both happen to get gas at the same gas station, you get assaulted. Is it because the dispute arose in employment, you now have to be arbitrating claims against someone that assaulted you at the gas station? So it can be – even if it was limited to employment claims, it doesn't automatically – There might be tough line-drawing problems, whether it's employment or not related. But I really am trying to figure out how much of your claim – putting my cards on the table, I think that the employment thing kind of decides this case. It all kind of comes down to whether we interpret this contract as only including employment and not. What if you had named the payroll processing vendor? I mean you've got a wage claim here, and there was some problem with regard to the wage statement. Wouldn't that be subject to arbitration under this agreement? Yeah. I would think so. I would. But I – so that is – if you're asking for possibilities when you might sue a vendor, you are raising one. If we go to the broader and we say – if you're just focusing on the cook, but we also have the argument that there's a public injunction waiver. I would argue even if you just have that, I think the Ramirez case said – I think they had an example for severance that the agreement in that, there were excluding claims that – I think it was Hodges, which I was on. So I thought Hodges said that you don't kind of come up with hypothetical situations that aren't presented in your case in order to try to find unconscionability. So this public injunctive relief argument that the – I believe the lower court didn't reach or – one of them it didn't reach. Maybe it reached this one but not the PAGA. But these things that – if your client doesn't have a public injunctive relief claim. Well, that misinterprets unconscionability law. So California unconscionability law is focused. I know that's your argument, but we have – I thought we have case law on that, like right directly on point case law in Hodges I believe. Well, Hodges and McGill didn't involve unconscionability. They involved whether or not a public injunction waiver barred the claims in that case and because it was the Cruz-Brown rule and then it turned into the McGill rule. But it was based on Civil Code 3513, whether – which doesn't look to like unconscionability, look at the hypotheticals and look at – when the plaintiff's complaint does not seek public injunctive relief. I think I'm – at least some of that has quotes around it and what might – Right, but the McGill rule is – but that's not an unconscionability argument. So in other words, that – both of those cases were limited to the McGill rule as if it's illegal to waive public injunctive relief. We did say in Hodges that courts should not, quote, stretch to invalidate contracts based on hypothetical issues that are not actually presented in the party's dispute, end quote. That sure sounds like what you're asking us to do. Well, not because we're arguing unconscionability. It's a completely different theory. So if unconscionability is an issue, we don't have the statute saying and the case law, Ramirez v. Superior Court, the California Supreme Court, noting that you look at the beginning of when they was formed and you don't look at these post circumstances that happened. So I would argue McGill was under a different statute. It does note that you can't do it, but that doesn't apply to an unconscionability analysis. I do agree with you that the public injunctive relief argument, which I think I'm remembering now the district court did reach, and then Paga suits, which it did not, and the bar on using arbitration words as precedent, those all would be independent of the employment aspect. And so then the question would just be if somehow those three things, which the district court didn't reach most of those. Let me ask you let me let me ask you probably a question that that's related to the employment thing. You know, you heard me talk about and feel free to push back on my characterization here, but it seems like that language that that including but not limited to claims are rising to out of. And then the list is all employment stuff. It seems there's three ways that that could be what could have been meant by that. And you heard what my three ways where I can repeat it. But but why should we interpret it that that that what they meant was but not limited to what was intended or or what that language means is super broad. Because I think it is. I think it was intended to be. I think you look at the language of the clause. And, for example, you start with the structure of the sentence language used, and it shows they were intending to have a broad scope agreement. I know there's a lot of cases in your best argument is but not limited to sounds really. Yeah, that's your best argument is just a pure text. But it's not, you know, sorry, your honor. It is not just we start, you know, they define it. A covered claim is to the maximum extent permissible pursuant to federal law. Does that sound like a attempt to narrowly define that helps so much? Because I think as far as whether whether it's that sort of begs the question, because if it if they if it was meant to be employment, they want it to be employment to the max extent permissible, which would kind of explain, actually, why they included not limited to. Because my point about not trying to get around an employment claim by characterizing it, something else is by characterizing it, something else in these other these other, you know, these Latin phrase things. How you say judge? Yeah, that that those those those all are caught telling you to basically look at the context. Right. And when I look at the context, they every time it actually talks about anything specific, it is employment. That seems to bear in favor of the other side's interpretation of this. And, you know, you have just piggybacking off of Judge Van Dyke's question. There is a provision in the contract that says the arbitration shall be conducted pursuant to the employment arbitration rules. So in that event, an intent that the contract is about employment claims and not anything else. I would disagree. I've had and I don't have the cases off hand, but there's case law that has employment agreements that apply the consumer rules. It's it's just a selection of arbitration rules that doesn't define the scope of the agreement. And I, again, I would go to be decisive. But if what we're looking at rarely are contextual arguments decisive. And what I'm just struggling with is that you take what Judge Tong just referred to. You take the fact that any time this thing talks about anything specific, I think literally any time it actually gets into the weeds, it is all employment related. And what you have against that, I think, is just but not limited to that, the the natural capaciousness of that language. And and I do. What else do you have? OK, Your Honor, let let me go through it. So, again, I know you're discounting it, but to the maximum extent permissible pursuant to federal law, I think if it's intended to be limited to employment claims, it's clear that that's going to be covered. But I think that phrase is intending to say that we're going to try and move as broad as possible. Then it starts with any claim. Right. Any any claim. They've given examples of citing a bunch of cases that do it differently that just say arising out of the employment relationship. They you know. They could have easily done that. They chose not to do that. Then they include the term including but not limited to. This is textually that that to me. I mean, if we want to try and that, why else would you include that, including but not limited to? I know you're giving two options, but I don't think those options apply here. You know, just like Cook, the USC, just like I think we in our F.R.A.P. 28 J letter. There's Gardner. There's I'm sorry. I mean, you do agree that Cook's language specifically says, in addition, has language that refers to something outside of employment. So I agree. But I. Yeah. OK, I would just say that it's common that at least before Cook that companies were trying to have these broad clauses, infinite arbitration clauses that can reach as broad as possible. And under California public policy that when you're going too broad beyond the scope of the relationship, that's that's unfair under our public policy. And, you know, obviously, anecdotally, everyone thinks to the Disney World case where, you know, someone signed a two week trial Disney plus and Disney was willing to try and use that in a wrongful death suit against the husband. Like these. So we're trying to limit that here. And again, I would also say pointed out by the judge. Why can't the problem be be resolved by excising six words from two provisions in the contract? I think you're if you're asking me. Can it be excised just in the you know, can it be excised? I would say yes. However, preamble and the arbitration clause. How let me let me do one more point before we move on to that, because that goes more towards severability. But there's also, as the trial point pointed out that there is a carve out for currently pending in litigation. Any claims currently pending in the NBA in litigation and ABM states in their tomato declaration, the company's been presenting this to new employees. I don't quite if that seems to be easy. I'm I'm working for somebody. I go get another job. I come back to work for them. And so they're wanting to make that it's not that could be covering employment also. Right. You know, try to make sure that if there's an employment claim that's already existing because you previously worked for us, that we're going to cover that. Yeah, I think it's broader. I think obviously textually, including but not limited to these are drafted. I know you've got about a minute left. I want to make sure Judge Tallman, you get to judge Thomas severability question. Severability. The question that wasn't the answer that wasn't raised. It is not just can we do it is is the question is, is it an abuse of discretion for the court not to do it? And so it's within the court's discretion. Can they do it? Or the Ramirez case goes through step by step. They could do it for deterrent reasons, even if they can do it. That whether they should do it and. Here, the court felt that it permeated the agreement that it specifically found that it was intended to advantage the employer and give an inferior form forum for the plaintiff. And that's well within its discretion to look at these consider the the unconscionable terms. And it's not an abuse of discretion. It's within its discretion. All right. Well, you have any other questions? No, we really appreciate it's been very helpful. And I feel like we've focused in on these issues that that I that I'm focused on in this case. I think your counsel on the other side has three minutes for rebuttal. Thank you. Just just a few words, Your Honor. I think to sum it up, the essence of this agreement is intended to arbitrate employment agreements. Everything about it, all the nuances and the specifics go to employment related disputes. At most, there are those six words that hypothetically could expand it. But that certainly is not the overriding purpose. And as mentioned under Ramirez to the court said, unless the overall purpose of the agreement is illegality. And this is a standard kind of employment agreement to to arbitrate disputes for all the reasons that have been discussed today. So the abuse of discretion is probably your biggest challenge with that, because. And I guess your counsel, your counsel said it's abuse of discretion. I think that's right. The standard for review for severability. It is. But where the error is and where the abuse of discretion clearly is, is the district court used a standard of if there's more than one unconscionable provision, then we can't sever. And that's where Ramirez to the California Supreme Court specifically said, we clarify. I'm quoting here. We clarify that no bright line rule requires a court to refuse enforcement if a contract has more than one unconscionable term. So the Supreme Court has ruled that, in essence, the standard that was used at the district court is just legally wrong. And then secondly, the court went on to say that the question on severability is if you can excise it without rewriting the contract, then the only question is, do the interests of justice call for it? And the interests of justice clearly do. This is an arbitration agreement that was entered into. It's fairly standard and it's favored by both FAA law as well as California law. Any other questions from my colleagues? All right. Well, thank you, counsel. Thank you to both counsel. All the arguments have been very helpful this morning. And that wraps up our week. Thank you very much. Thank you. Thank you all.
judges: TALLMAN, VANDYKE, TUNG